**[ORAL ARGUMENT NOT YET SCHEDULED]**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE
## DISTRICT OF COLUMBIA CIRCUIT

Case No. 22-5341

MONTE SILVER, ET AL.

*Plaintiffs-Appellants,*

-v-

INTERNAL REVENUE SERVICE, ET AL.

*Defendants-Appellees*

## ON APPEAL FROM THE ORDERS OF THE UNITED STATES
## DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

## APPELLANTS' OPENING BRIEF

L. Marc Zell (Bar No. 28960)
ZELL & ASSOCIATES
INTERNATIONAL ADVOCATES, LLC
1345 Ave. of the Americas
2nd Floor
New York, NY 10105
(212)-971-1349
*Email:  mzell@fandz.com*

Noam Schreiber (Bar No. 63387)
ZELL, ARON & CO.
34 Ben Yehuda St.
14th Floor
Jerusalem, Israel 9423001
011-972-2-633-6300
*Email: noam.schreiber@fandz.com*

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant D.C. Circuit Rule 28(a)(1), Appellants, Monte Silver and Monte Silver, Ltd., hereby submit this Certificate as to Parties, Rulings, and Related Cases.

### 1. Parties, Intervenors, and Amici Curiae

The parties to this appeal are Appellants Monte Silver and Monte Silver, Ltd. The Appellees are the Internal Revenue Service, the United States Department of Treasury, Charles Rettig in his official capacity as Commissioner of the Internal Revenue Service and Janet Yellen, in her official capacity as United States Secretary of the Treasury.

No *amici* appeared before the District Court.

### 2. Rule 26.1 Disclosure Statement

Appellant Monte Silver, Ltd. is an Israeli private corporation, solely owned by Appellant Monte Silver. Monte Silver, Ltd. does not have a parent corporation or other parent entity.

### 3. Rulings Under Review

Appellants seek review of the District Court's Order entered on November 7, 2022 (ECF 24), pursuant to a Memorandum Opinion issued on

the same day (ECF 25).

**4. Related Cases**

The case on review has not previously been before this Court or any other court. *Silver v. Internal Revenue Serv.*, 531 F. Supp. 3d 346 (D.D.C.), *opinion modified on denial of reconsideration*, 569 F. Supp. 3d 5 (D.D.C. 2021), *and aff'd sub nom. Monte Silver & Monte Silver, Ltd. v. Internal Revenue Serv.*, No. 21-5116, 2022 WL 17420308 (D.C. Cir. Dec. 6, 2022) addressed a similar challenge to a different set of federal regulations.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ......................i

TABLE OF CONTENTS ............................................................................. iii

TABLE OF AUTHORITIES .........................................................................iv

GLOSSARY OF ABBREVIATIONS ............................................................viii

JURISDICTIONAL STATEMENT ................................................................1

STATEMENT OF ISSUES .........................................................................1

STATUTES AND REGULATIONS ...............................................................2

STATEMENT OF THE CASE ......................................................................2

    STATUTORY AND REGULATORY BACKGROUND ..................................2

       1.  The Anti-Injunction Act .............................................................2

       2.  The Regulatory Flexibility Act ....................................................4

       3.  The GILTI Regime ...................................................................6

    PROCEDURAL BACKGROUND .............................................................9

SUMMARY OF ARGUMENT .....................................................................11

    STANDING .......................................................................................12

    ARGUMENT ......................................................................................13

    Plaintiffs' RFA lawsuit is not barred by the Anti-Injunction Act ........................13

       1.   The *purpose* of Plaintiffs' RFA lawsuit is *not* to enjoin the collection or assessment of a tax ....................................13

       2.   The complaint seeks additional relief that does not implicate the AIA whatsoever ...........................................19

       3.   The *South Carolina v. Regan* exception applies to this case ....................................................................23

CONCLUSION ......................................................................................24

CERTIFICATE OF COMPLIANCE ..............................................................25

CERTIFICATE OF SERVICE .....................................................................26

# TABLE OF AUTHORITIES

## Supreme Court Cases

*CIC Servs., LLC v. Internal Revenue Serv.,*
    141 S. Ct. 1582 (2021) ........................................ 3, 4, 13, 14, 15, 16, 17, 18
*Direct Mktg. Ass'n v. Brohl,*
    575 U.S. 1 (2015) ................................................................. 13, 16
*Hecht Co. v. Bowles,*
    321 U.S. 321 (1944) ................................................................. 22
*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ................................................................. 12
*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
    566 U.S. 639 (2012) ................................................................. 17
*South Carolina vs. Regan,*
    465 U.S. 367 (1994) ................................................................. 23
*United States v. Est. of Romani,*
    523 U.S. 517 (1998) ................................................................. 18

## Cases

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n,*
    988 F.2d 146 (D.C. Cir. 1993) ................................................... 21
*CIC Servs., LLC v. Internal Revenue Serv.,*
    592 F. Supp. 3d 677 (E.D. Tenn. 2022) ...................................... 21
*Cohen v. United States,*
    650 F.3d 717 (D.C. Cir. 2011) ................................................... 17
*Comcast Corp. v. F.C.C.,*
    579 F.3d 1 (D.C. Cir. 2009) ...................................................... 21
*Harper v. Rettig,*
    46 F.4th 1 (1st Cir. 2022) ......................................................... 17
*Milk Train, Inc. v. Veneman,*
    310 F.3d 747 (D.C. Cir. 2002) ................................................... 21
*Silver & Monte Silver, Ltd. v. Internal Revenue Serv.,*
    2022 WL 17420308 (D.C. Cir. Dec. 6, 2022) .............................. 10
*Silver v. Internal Revenue Serv.,*
    2019 WL 7168625 (D.D.C. Dec. 24, 2019) ............................ 10, 20
*Silver v. Internal Revenue Serv.,*
    531 F.Supp.3d 346 (D.D.C. 2021) ............................................. 10

iv

*Silver v. Internal Revenue Serv.,*
  569 F. Supp. 3d 5 (D.D.C. 2021) ............................................ 10
*Z Street v. Koskinen,*
  791 F.3d 24 (D.C. Cir. 2015) .......................................... 17, 23

**Statutes**

5 U.S.C. §601............................................................................ 1
5 U.S.C. §603............................................................................ 5
5 U.S.C. §604............................................................................ 5
5 U.S.C. §605(b) ....................................................................... 5
5 U.S.C. §611............................................................................ 5
5 U.S.C. § 611(a) ...................................................................... 5
5 U.S.C. §611(a)(4)(A) .......................... 6, 12, 19, 20, 21, 22
5 U.S.C. §611(a)(4)(B) ................................................. 19, 20
5 U.S.C. §706(2) ..................................................................... 21

26 U.S.C. §250......................................................................... 8
26 U.S.C. §7421....................................................................... 1
26 U.S.C. §7421(a) .................................................................. 2
26 U.S.C. §951A .................................................................. 1, 7
26 U.S.C. §965......................................................................... 9

28 U.S.C. §1291....................................................................... 1
28 U.S.C. §1331....................................................................... 1

Act of Sept. 19, 1980, Pub. L. No. 96–354, §2, 94 Stat. 1164 ...................... 4
Pub. L. No. 104-121, §242, 110 Stat. 847 (1996) .......................................... 5
Revenue Act of 1862, ch. 119, 12 Stat. 432 ................................................... 2
Revenue Act of 1867, ch. 169, §10, 14 Stat. 471 ........................................... 3

Small Business Regulatory Enforcement Fairness Act,
  Pub. L. No. 104-121, 110 Stat. 857 ............................................................. 5

Title II, Section 212
  (Small Business Regulatory Enforcement Fairness Act of 1996)
  Pub. L. No. 104-121,
  codified as a Note to 5 U.S.C. §601 .............................................. 12, 19, 21

## Regulations

26 C.F.R. §1.6038-2 ........................................................................ 9
26 C.F.R. §1.6038-5 ................................................................... 9, 16
26 C.F.R. §1.6038-5(c) ................................................................... 9

*Guidance Related to Section 951A (Global Intangible Low-Taxed Income) and Certain Guidance Related to Foreign Tax Credits*, 84 Fed. Reg. 29288 (June 21, 2019) ...................................................................... 8

*Guidance Related to Section 951A (Global Intangible Low-Taxed Income)*, 83 Fed. Reg. 51072 (Oct. 10, 2018) ............................................... 8

## Legislative History and Congressional Debates

142 Cong. Rec. S3242 (daily ed. Mar. 29, 1996), 1996 WL 142887 (Joint Managers' Statement of Legislative History and Congressional Intent) ...............................................................5, 6, 18, 20, 22

## Law Review Articles

*Administrative Law - Judicial Review of Treasury Regulations - Federal Circuit Invalidates A Treasury Regulation Under State Farm for Lack of Contemporaneous Statement of Justification. - Dominion Resources, Inc. v. Unit*,
126 HARV. L. REV. 1747 (2013) ................................................... 22

Kristin E. Hickman & Gerald Kerska, *Restoring the Lost Anti-Injunction Act*, 103 VA. L. REV. 1683 (2017) ....................................................... 2

Kristina Daugirdas, Note, *Evaluating Remand Without Vacatur: A New Judicial Remedy for Defective Agency Rulemakings*, 80 N.Y.U. L. REV. 278 (2005) ................................................... 22

Patricia M. Wald,
  *Judicial Review in Midpassage: The Uneasy Partnership Between Courts and Agencies Plays on*,
  32 Tᴜʟsᴀ L.J. 221 (1996) ............................................................... 21

Sheldon D. Pollack,
  *The First National Income Tax, 1861-1872*,
  67 Tᴀx Lᴀw 311 (2014) ............................................................... 2

# GLOSSARY OF ABBREVIATIONS

| AIA | Anti-Injunction Act |
|-----|---------------------|
| RFA | Regulatory Flexibility Act |

# JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction over Appellants' claims under 28 U.S.C. §1331 because the case was brought under the Regulatory Flexibility Act, 5 U.S.C. §601 *et seq.* ("RFA"). The district court issued its order granting the government's motion to dismiss on November 7, 2022.

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §1291 because all orders appealed from are final judgments that dispose of all the parties' claims in the case. Appellants timely noticed their appeal on December 26, 2022.

# STATEMENT OF ISSUES

The issue raised on this appeal is whether Plaintiffs' Regulatory Flexibility Act challenge [5 U.S.C. §601 *et seq*] to the GILTI (Global Intangible Low-Taxed Income) regulations implementing 26 U.S.C. §951A is barred by the Anti-Injunction Act, 26 U.S.C. §7421.

## STATUTES AND REGULATIONS

Applicable statutes and regulations are contained in a separate addendum.

## STATEMENT OF THE CASE

## STATUTORY AND REGULATORY BACKGROUND

### 1. The Anti-Injunction Act

Under the AIA, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. §7421(a). The origin of the AIA is found in the Civil War, which resulted in significant government debt. In turn, the federal government sought new sources of revenue in addition to the traditional source it relied upon, namely tariffs. Kristin E. Hickman & Gerald Kerska, *Restoring the Lost Anti-Injunction Act*, 103 VA. L. REV. 1683, 1720 (2017). To finance the Civil War, Congress adopted a collection of new "internal" taxes, including the nation's first income tax. *See* Revenue Act of 1862, ch. 119, 12 Stat. 432 ("1862 Act"); *see also* Sheldon D. Pollack, *The First National Income Tax, 1861-1872*, 67 TAX LAW. 311, 312 (2014); *Restoring the Lost AIA*, at 1723-1724 (discussing the 1862 Act and its precursory, the 1861 Act).

In 1867 – in its effort to prevent judicial review from thwarting the collection of new taxes – Congress amended the 1862 Act to include the

language paralleling that of the current AIA, preventing suits from "restraining the assessment or collection of any tax." Revenue Act of 1867, ch. 169, §10, 14 Stat. 471, 475. The text of the original AIA has remained almost identical to as it was when first enacted in 1867.[1]

The Supreme Court, as well as this Court, have had several opportunities to interpret the AIA. In its most recent iteration of the statute's scope – pertinent to this appeal –the Supreme Court concluded that in considering a suit's purpose, a court inquires "not into a taxpayer's subjective motive, but into the action's objective aim — essentially, the relief the suit requests." *CIC Servs., LLC v. Internal Revenue Serv.*, 141 S. Ct. 1582, 1589 (2021).

*CIC* involved an APA challenge to an IRS action which, if successful, would have directly resulted in the invalidation of a tax. A unanimous Court allowed the action to proceed despite the AIA, finding that the lawsuit was

---

[1] *See Restoring the Lost AIA*, at 1726-1730, describing the changes in the act and concluding that:

> the only amendments to the AIA have come when Congress wanted to expand the availability of judicial review and, correspondingly, to make clear Congress's intention to limit the AIA's reach. On more than one occasion, those amendments were a reaction to expansive IRS or judicial interpretations of the AIA that cut off judicial review in contexts apart from ordinary, run-of-the-mill enforcement efforts.

not brought for the purpose of restraining the assessment of any tax. The Supreme Court concluded that the complaint described "the relief requested as setting aside the IRS [notice], enjoining the enforcement of the notice as an unlawful IRS rule and declaring the notice is unlawful". *CIC Servs.,* 141 S. Ct. at 1590. Although the ultimate end result may be the voidance of a tax, "it brings no legal claim against the separate ***statutory*** tax." *Id.* (emphasis added). The *CIC* complaint prayed "for injunctive relief from the Notice's reporting rules, not from any impending or eventual tax obligation." *Id.*

## 2. The Regulatory Flexibility Act

### A. Congress enacts the RFA

Enacted originally in 1980, the RFA was intended to address the plight of small businesses dealing with the burdensome effect of federal law regulations. In creating the RFA, Congress noted that "uniform Federal regulatory and reporting requirements have in numerous instances imposed unnecessary and disproportionately burdensome demands [...] upon small businesses [...] with limited resources.". RFA, Act of Sept. 19, 1980, Pub. L. No. 96–354, §2, 94 Stat. 1164.

To accomplish these goals, the RFA required government agencies to conduct an "initial regulatory flexibility analysis" on proposed regulations

4

and a "final regulatory flexibility analysis" upon issuance of the rule. 5 U.S.C. §§603-604.  The above analyses are not required if the "head of the agency […] certifies that the rule will not, if promulgated, have a significant economic impact on a substantial number of small entities." 5 U.S.C. §605(b).  At the time of its original enactment, §605(b) the RFA was not subject to judicial review.  *See* 5 U.S.C. § 611(a), *amended by* Pub. L. No. 104-121, §242, 110 Stat. 847, 865-66 (1996).

## B. The 1996 Small Business Regulatory Enforcement Fairness Act

Over the next 16 years after the RFA's creation it became clear that it had no teeth. Thus, in 1996, after years of debate, Congress enacted the Small Business Regulatory Enforcement Fairness Act, Pub. L. No. 104-121, 110 Stat. 857 (codified as amended in scattered sections of 5 U.S.C.) ("SBREFA").

The SBREFA, for the first time, provided for judicial review of agency compliance under the RFA. 5 U.S.C. §611; 142 Cong. Rec. S3242, S3245 (daily ed. Mar. 29, 1996), 1996 WL 142887 (Joint Managers' Statement of Legislative History and Congressional Intent) (judicial review added to address small business complaints that "agencies have given lip service at best to RFA."). [Stat. Addendum, at 30].

Under SBREFA, where agencies violated the RFA, courts were now authorized to provide the following forms of relief:

**(a)**    remand the rule to the agency under 5 U.S.C. §611(a)(4)(A); and

**(b)**    defer the enforcement of the rule against small entities "unless the court finds that continued enforcement of the rule is in the public interest." 5 U.S.C. §611(a)(4)(B).

The IRS was one of the chief culprits singled out for failing to implement RFA protections for small businesses. The IRS was explicitly made subject to the RFA under the 1996 amendment, and Congress specifically directed that "the IRS should take an expansive approach […] when considering whether to conduct a regulatory flexibility analysis." 142 Cong. Rec. S3242, at S3245. [Stat. Addendum, at 29].

## 3. The GILTI Regime

### A. The Tax Cuts and Jobs Act

Until Congress enacted the Tax Cuts and Jobs Act, corporations were generally not subject to United States taxation on the earnings of their CFCs. Those earnings became taxable only when they were repatriated to the United States corporate shareholder via a dividend. This created an incentive for large multinational corporations to shift income from the

United States to their CFCs incorporated in low-tax foreign jurisdictions. GILTI created a new and overly complex tax regime to avoid this abuse.

GILTI requires United States shareholders (such as U.S. parent companies – Google, Apple, and individuals such as Monte Silver) who own an interest in a CFC (*i.e.*, their foreign subsidiaries) to treat as income for U.S. tax purposes, their pro rata shares of the annual taxable income of these CFC subsidiaries for each and every year starting in 2018.

Thus, by definition, GILTI imposed a second income tax on the same profits of the CFC, *i.e.*, double taxation. The CFC's profits were first subject to corporate income tax in the foreign country of incorporation. Then, the exact same profits were subject to U.S. GILTI tax.

The only way to avoid the second tax annually was and remains through highly complex and costly tax planning involving a variety of deductions under 26 U.S.C. §260 and foreign tax credits available under 26 U.S.C. §951A. GILTI was structured so that U.S. shareholders would not pay any GILTI taxes in the United States so long as the CFC was subject to corporate income tax of at least 13.125% in the foreign country.

GILTI does not distinguish between large multinational companies and the smallest of businesses, like Monte Silver and his CFC, Silver Ltd. As a result, the only way Plaintiffs could even hope to avoid double taxation

each tax year on the same profits was to incur compliance costs in utilizing 26 U.S.C. §250 and foreign tax credits. And, since Silver Ltd. was generally subject to Israeli corporate income tax of over 13.125% (in Israel it is over 20%), the profits of Silver Ltd. ended up not being subject to GILTI. However, they were subject to annual compliance costs to zero out GILTI liability.

### B. The GILTI Regulations

On October 10, 2018, the Treasury Department and the IRS published a notice of proposed rulemaking that contained proposed regulations implementing section 951A, entitled *Guidance Related to Section 951A (Global Intangible Low-Taxed Income)*, 83 Fed. Reg. 51072 (Oct. 10, 2018).

The Proposed Regulations did not contain an IRFA as described in the statute. Instead, Defendants avoided the IRFA requirement by having Secretary Mnuchin certify that the Proposed Regulations would not have "a significant economic impact on a substantial number of small entities." *Id.*, at 51087.

On June 21, 2019, Treasury issued the Final Regulations – over 300 pages – entitled *Guidance Related to Section 951A (Global Intangible Low-Taxed Income) and Certain Guidance Related to Foreign Tax Credits*, 84 Fed. Reg. 29288 (June 21, 2019) ("GILTI Regulations").

The GILTI Regulations impose reporting requirements on U.S. shareholders of CFCs, including thousands that would be considered small businesses.[2] Yet, despite that, Defendants did not include a FRFA in the Final Regulations. Instead, the Final Regulations included a certification that they "will not have a significant economic impact on a substantial number of small entities." *Id*., at 29333.

## PROCEDURAL BACKGROUND

On June 12, 2020, Plaintiffs filed a lawsuit against the IRS and Treasury, alleging that they violated the RFA when promulgating the Proposed and Final Regulations.[3] On August 24, 2020, the government

---

[2] For example, under the GILTI Regulations, U.S. shareholders of CFCs are required to **annually** file form 8992:

> United States shareholder of any controlled foreign corporation […] must make an annual return on Form 8992, 'U.S. Shareholder Calculation of Global Intangible Low–Taxed Income (GILTI),' […] for each U.S. shareholder inclusion year […] setting forth the information with respect to each such controlled foreign corporation, in such form and manner, as Form 8992 […] prescribes."

84 Fed. Reg., at 29369; 26 C.F.R. §§1.6038-2, 1.6038-5, entitled *Information returns required of certain United States persons to report amounts determined with respect to certain foreign corporations for global intangible low-taxed income (GILTI) purposes*. A copy of the form is available online here. Failure to file form 8992 carries with it monetary penalties. *See* 26 C.F.R. §1.6038-5(c).

[3] Plaintiffs filed a similar lawsuit challenging the government promulgation of regulations issued implementing the Transition Tax, 26 U.S.C. §965

moved to dismiss the complaint, arguing in part that Plaintiffs' claims are jurisdictionally barred under the AIA. The government also argued that Plaintiffs' lack Article III standing.

On November 7, 2022, the district court issued its memorandum opinion. [JA 83-92]. The court denied the government's Article III argument. The court found that Plaintiffs sufficiently alleged that they will incur compliance costs due to the GILTI Regulations and, because, "GILTI compliance occurs annually—unlike the one-time fee in *Silver I*—the Court

---

(*Silver I*). In *Silver I*, the government also moved to dismiss under the AIA. However, the district court denied the motion, ruling that Plaintiffs:

> challenge the IRS's adopting of regulations without conducting statutorily mandated reviews designed to lessen the regulatory burden on small businesses. As relief, they ask the court simply to compel the agencies to do what the law requires—Regulatory Flexibility Act and Paperwork Reduction Act analyses. Tax revenues and their collection are unaffected by such relief […] The Anti-Injunction Act therefore presents no barrier to Plaintiffs' claims.

*Silver v. Internal Revenue Serv.*, 2019 WL 7168625, at *3 (D.D.C. Dec. 24, 2019). *Silver I* was ultimately dismissed for lack of Article III standing and the court never addressed the AIA matter again. *See Silver v. Internal Revenue Serv.*, 531 F.Supp.3d 346 (D.D.C. 2021) and *Silver v. Internal Revenue Serv.*, 569 F. Supp. 3d 5 (D.D.C. 2021). The decision was affirmed by this Court in *Silver & Monte Silver, Ltd. v. Internal Revenue Serv.*, No. 21-5116, 2022 WL 17420308 (D.C. Cir. Dec. 6, 2022). The D.C. Circuit also did not address the AIA issue in its decision. A petition for cert. before the United States Supreme Court is currently pending, case no. 22-907.

can fashion relief that could conceivably redress Plaintiffs' claimed injury." [JA 89].

However, the district court accepted the government's AIA challenge, ruling that because "Plaintiffs have sued to block a rule governing who pays a tax and in what amount, *CIC* mandates that the Court dismiss the complaint as barred by the AIA." [JA 91].

Plaintiffs timely appealed the decision of the district court on December 26, 2022. [JA 93].

## SUMMARY OF ARGUMENT

The district court concluded that this lawsuit is barred under the AIA because it seeks to defer the enforcement of the GILTI statutory regime. This conclusion is wrong for three main reasons.

1. The underlying purpose of the lawsuit is not to enjoin the collection or the assessment of a tax. Rather, Plaintiffs complain of the compliance and reporting costs that are incurred by small businesses who seek to comply with the GILTI regime. These compliance and reporting costs are independent of any collection or assessment of tax. [*See* Sec. 1 below].

2. Plaintiffs' requested relief included remanding the regulation back to

the agency for further consideration under 5 U.S.C. §611(a)(4)(A) and relief under Section 212 (see footnote 7 below). These forms of relief do not implicate the AIA in any fashion. The district court erred by failing to consider Plaintiffs' additional forms of relief that are not barred by the AIA. [*See* Sec. 2 below].

3. Finally, because Plaintiffs do not have an alternative forum to which to pursue their claims, the AIA cannot serve as a jurisdiction bar. [*See* Sec. 3 below].

## STANDING

To establish standing, a plaintiff must demonstrate that he (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife,* 504 U.S. 555 (1992). Plaintiffs satisfy these elements. *See* JA 87-89 (finding that Plaintiffs satisfy Article III standing, against government opposition).

## ARGUMENT

### Plaintiffs' RFA lawsuit is not barred by the Anti-Injunction Act

**1. The _purpose_ of Plaintiffs' RFA lawsuit is _not_ to enjoin the collection or assessment of a tax**

The district court's dismissal of the complaint under the AIA is wrong because the underlying purpose of Plaintiffs' lawsuit is not to invalidate a tax. Rather, the underlying and sole purpose of the lawsuit is to cause the IRS to conform its practices to the RFA's rule-making processes and, thus, ameliorate the burdensome reporting requirements and compliance costs associated with the GILTI Regulations.

In *CIC Servs., LLC v. Internal Revenue Serv.*, 141 S. Ct. 1582, 1589 (2021), the Supreme Court instructed courts to look to the relief sought in the complaint when assessing AIA applicability. In *CIC*, the Supreme Court clarified that the AIA "is 'not keyed to all activities that may improve a [s]tate's ability to assess and collect taxes.' It is instead 'keyed to the acts of **assessment** [and] **collection** themselves.' " *Id.*, at 1589, citing *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 11-12 (2015) [emphasis added].[4]

---

[4] *Direct Marketing* involved the Tax Injunction Act, which "was modeled on the Anti–Injunction Act" and contains nearly identical language but applies to challenges to state tax laws. 575 U.S. at 8. The Court held that the words used in both Acts are generally used in the same way and subsequently

The *CIC* Court found that the complaint described "the relief requested as setting aside the IRS [notice], enjoining the enforcement of the notice as an unlawful IRS rule and declaring the notice is unlawful.". *CIC Servs.,* 141 S. Ct. at 1590. Although the result may be the voidance of a tax, "it brings no legal claim against the separate statutory tax." *Id*. The *CIC* complaint prayed "for injunctive relief from the Notice's reporting rules, not from any impending or eventual tax obligation." *Id*.

That same reasoning is applicable here, to an even greater degree. Plaintiffs' complaint sought relief under the RFA to force the IRS and Treasury to issue the GILTI Regulations in such a way that would conform to that procedural statute. The objective purpose of Plaintiffs' RFA lawsuit is not to enjoin the government from collecting or assessing a tax. Nor could it have been. First, unlike *CIC* where the APA action had the direct result of voiding a tax, such outcome is impossible in an RFA action.  The remedies available to Plaintiffs under the RFA when challenging the GILTI Regulations do not and cannot void any tax, which is independently imposed by the statute.

In addition, it is undisputed that Plaintiffs do not owe any GILTI-

_____

adopted *Direct Marketing*'s interpretation of "assessment" and "collection" activities as applied to the Anti-Injunction Act. *CIC*, 141 S. Ct. at 1588-1589.

related tax and are not challenging the payment of any tax. [JA 90]. Thus, by definition, the challenge here cannot result in the restraining of tax assessment or collection. Plaintiffs, like the plaintiff in *CIC*, complain of the ongoing compliance and reporting costs they will continue to incur as a result of the regulations and the government's failure to comply with the RFA. [JA 11-12]. *See also supra*, fn. 2.

These ongoing reporting requirements under the GILTI Regulations are not – as the government urged the district court below – equivalent to the assessment of a tax.  In *CIC*, the Supreme Court identified three aspects that, when taken together, refute the idea that a procedural challenge to a regulatory tax regime is a "tax action in disguise." *CIC*, 141 S. Ct. at 1590. *First*, when the regulation includes affirmative reporting obligations, inflicting costs separate and apart from the statutory tax. *Second*, when the regulation and the statutory tax are several steps removed from each other. *Third*, and last, when the violation of a reporting requirement is sanctionable by separate penalties. *Id.*, at 1591-1592.

These three aspects are present in the GILTI context. *First*, Plaintiffs do not owe GILTI tax, nor are they challenging the GILTI tax or the substance of the regulations.  The essence of this action it to assist Plaintiffs in mitigating annual compliance and reporting costs by requiring the

government to comply with the RFA. *Second*, Plaintiffs' reporting requirements and compliance costs under the regulation and the statutory GILTI tax are completely removed from each other.[5] *Third*, a violation of

---

[5] The district court erroneously emphasized the connection between the regulations and the statutory tax. *See* JA 87 (concluding that the AIA barred the suit because the plaintiffs aimed "to interrupt a tax rule governing who pays what amount of tax"). However, the fact that the GILTI regulations may assist in calculating the statutory tax is not dispositive here. The target of Plaintiffs' lawsuit is not the tax; it is the reporting and compliance costs. Thus, irrespective of the relationship between the statute and the regulations, the AIA does not serve as a jurisdictional obstacle.

In the proceedings below, the government attempted – without citing to any supporting authority – to distinguish the reporting requirements at issue in *CIC* with those at issue here because "Self-reporting *per se* culminates in assessment of tax" [Government's *Memorandum of Law in Support of its Motion to Dismiss*, ECF 9-1 1:20-cv-1544 (CKK) (August 24, 2020)] and that "self-reporting of taxable income is tightly intertwined with tax assessment." [Government's *Notice of Recent Supreme Court Decision*, ECF 19 1:20-cv-1544 (CKK) (May 25, 2021)]. According to the government, therefore, all procedural challenges concerning self-reporting requirements of a taxpayer are automatically barred under the AIA.

This interpretation disregards the Supreme Court's AIA jurisprudence. The Supreme Court has made clear that information gathering is "a phase of tax administration procedure that occurs before assessment, levy or collection." *Direct Mktg.*, 575 U.S. at 8. "This step includes *private reporting* of information used to determine tax liability […]". *Id.* Assessment, on the other hand, is "step in the taxation process that occurred after, and was distinct from, the step of reporting information pertaining to tax liability." *Id.* (citing the Revenue Act of 1924, Pub.L. 68–176, § 277(a), 43 Stat. 299 which provided that the filing of a return would start the running of the clock for a timely assessment, thus indicating that the two phases are distinct.).

The government's argument that self-reporting equals assessment is thus incompatible with the very sources it relies upon. This argument echoes the government's "two sides of the same coin" argument in *CIC* which was rejected. *CIC*, 141 S. Ct., at 1590.

the GILTI reporting requirements is sanctionable by distinct penalties. *See supra* fn. 2; 26 C.F.R. §1.6038-5.

Because the purpose of Plaintiffs' complaint is to seek enforcement of the RFA and challenges the GILTI Regulations' reporting and information-gathering requirements, it does not implicate the AIA. *CIC*, 141 S. Ct. at 1590 (lawsuit challenging reporting requirements not barred by the AIA); *Harper v. Rettig*, 46 F.4th 1, 8 (1st Cir. 2022) (APA procedural challenges to IRS reporting requirement not barred by the AIA); *see also Cohen v. United States*, 650 F.3d 717, 728 (D.C. Cir. 2011) (APA challenge to tax rule not barred by AIA); *Z Street v. Koskinen,* 791 F.3d 24, 32 (D.C. Cir. 2015) (AIA does not prevent suit to obtain relief from unconstitutional delay in ruling on application for tax exemption).

The effect of the decision below – if affirmed – would be a categorical bar to RFA lawsuits challenging IRS regulations on AIA grounds. Not only is this outcome contrary to the language and structure in the RFA (*see* below, Sec. 2), but it also runs afoul of Congress' manifest intent in amending the RFA in 1996, an amendment aimed to put an end to Treasury and IRS recalcitrance in complying with the RFA.

Relatedly, the AIA should not bar this RFA lawsuit because the latter statute should govern the proper interpretation and application of the AIA.

In resolving conflicts between federal statutes, courts apply the well-known canon of statutory construction – *generalia specialibus non derogant* – the general does not detract from the specific. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012); *United States v. Est. of Romani*, 523 U.S. 517, 530 (1998) ("specific policy embodied in a later federal statute should control our construction of the priority statute."). These principles are all the more pertinent in the context of the RFA's interaction with the AIA. Here, Congress explicitly contemplated the tension between the RFA and AIA and sided with granting the courts "broad discretion to formulate appropriate remedies under the facts and circumstances of each case." 142 Cong. Rec. S3242, S3245. [Stat. Addendum, at 29].

Reduced to its basic premise, the district court's decision ignored the ultimate relief being sought under the RFA. Instead, the court concluded that the lawsuit is barred by the AIA because it "defers enforcement of the challenged regulations." [JA 91]. That analysis is inconsistent – and even conflicts – with *CIC* and the RFA. If the aim of the lawsuit is relief from reporting requirements and compliance costs – as is the case here – the AIA does not apply. *CIC* teaches us that the deferment of a tax regulation – even if it may affect the assessment or collection of a tax – does not, *ipso facto*, bar the case under the AIA.   By failing to address the underlying purpose

of the complaint – RFA relief from reporting and compliance costs – the district court deviated from *CIC* and its decision should be reversed.[6]

## 2. The complaint seeks additional relief that does not implicate the AIA whatsoever

The ruling of the district court is also erroneous because it completely ignores the additional relief sought by Plaintiffs which does not implicate the AIA in any way. In addition to the request to defer the enforcement of the rule under 5 U.S.C. §611(a)(4)(B), Plaintiffs ***also*** sought to (i) remand the regulations to IRS and Treasury under §611(a)(4)(A), and (ii) to publish guides to assist small entities in complying with their promulgated rules. [JA 13-14].[7]

These latter forms of relief do **not** enjoin the government from collecting or assessing a tax while the regulations are on remand. Under this form of relief, Plaintiffs do not seek any stay or injunction against the regulations or the tax. Plaintiffs simply request that the court instruct the IRS and Treasury to conduct an RFA analysis. The district court erred by

---

[6] The district court in *Silver I* correctly understood this point in denying the government's motion to dismiss on AIA grounds. *See above*, footnote 3.

[7] *See* Title II, Section 212 (Small Business Regulatory Enforcement Fairness Act of 1996) of Pub. L. No. 104-121, codified as a Note to 5 U.S.C. §601.

isolating the deferment relief without even considering the other – non-deferment – forms of relief.

Aggravating this error, the district court overlooked the language of the deferment relief in §611(a)(4)(B) which explicitly authorizes courts to allow for the continuation of enforcement of the regulation for "public interest" purposes. 5 U.S.C. §611(a)(4)(B). This language was adopted by Congress specifically with the AIA in mind:

> The amendment also directs the court to consider the public interest in determining whether or not to delay enforcement of a rule against small entities pending agency compliance with the court's findings. […] [T]his language should be read to require the court to give appropriate deference to the legitimate public interest in the assessment and collection of taxes reflected by the Anti-Junction [*sic*] Act.

142 Cong. Rec. S3242-02. [Stat. Addendum, at 29].

Congress anticipated situations where relief under §611(a)(4)(A) (remand-without-deferment) would be the more appropriate type of remedy. The mere fact that the deferment relief under §611(a)(4)(B) may (potentially) implicate the AIA is not grounds to categorically bar the remand-without-deferment relief under §611(a)(4)(A).

To the extent the deferment of the regulations poses AIA concerns (to which Plaintiffs contend that it does not, *see above*, Sec. 1), the court could have and should have addressed them at the merits stage. *See Silver v.*

20

*Internal Revenue Serv.*, 2019 WL 7168625, at *3 (D.D.C. Dec. 24, 2019) (denying government's motion to dismiss on AIA grounds, noting that it could address the stay of the regulations to the extent Plaintiffs prevail on the merits).

Even at the merits stage, should the district court conclude that the AIA, in fact, poses some jurisdictional barrier, it could still provide relief under 5 U.S.C. §611(a)(4)(A) (remand-without-deferment) and Section 212 (*see* footnote 7 above).  This type of relief would pose no AIA concerns and is similar to the "remand-without-vacatur" principle adopted and articulated by this Court in *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146 (D.C. Cir. 1993); *see also CIC Servs., LLC v. Internal Revenue Serv.*, 592 F. Supp. 3d 677, 687 (E.D. Tenn. 2022), *on reconsideration*, 2022 WL 2078036 (E.D. Tenn. June 2, 2022) (discussing the *Allied-Signal* remand-without-vacatur principle in connection with the rules at issue in *CIC*);[8] *see*

---

[8] Under *Allied-Signal*, in deciding whether to remand without vacating ("RWV"), a reviewing court may consider both: (a) the seriousness of the order's deficiencies, as well as (b) the disruptive consequences of an interim change that may itself be changed.

In the context of the APA, both Judge Randolph and Sentelle emphasized that the plain text of §706(2) of the APA commands courts to "set aside" agency actions that they determine are "arbitrary, capricious, [or] an abuse of discretion." On this view, a court that determines that an agency action is in violation of the APA must order vacation. *See Comcast Corp. v. F.C.C.*, 579 F.3d 1, 12 (D.C. Cir. 2009) (Randolph, J., concurring); *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 756 (D.C. Cir. 2002) (Sentelle, J.,

*also* Kristina Daugirdas, Note, *Evaluating Remand Without Vacatur: A New Judicial Remedy for Defective Agency Rulemakings*, 80 N.Y.U. L. REV. 278, 279 (2005) (discussing the evolution of this doctrine in the D.C. Circuit); *Administrative Law - Judicial Review of Treasury Regulations - Federal Circuit Invalidates A Treasury Regulation Under State Farm for Lack of Contemporaneous Statement of Justification. - Dominion Resources, Inc. v. Unit*, 126 HARV. L. REV. 1747, 1752 (2013) (discussion the *Allied-Signal* remand-without-vacatur principle in challenges to Treasury regulations).

The decision of the district court is, at worst, erroneous and, at best, premature. [*See also* JA 79]. The court failed to properly apply *CIC* by focusing on the (potential) end-result and not the purpose. This failure is exacerbated by the court's disregard of the additional relief sought by

---

dissenting). *See also* Patricia M. Wald, *Judicial Review in Midpassage: The Uneasy Partnership Between Courts and Agencies Plays on*, 32 TULSA L.J. 221, 236 (1996) (discussing the dispute whether RWV is proper under the APA).

This dispute, however, does not affect the relief sought under the RFA which explicitly authorizes courts to remand with vacating under §611(a)(4)(A). *Compare* 5 U.S.C. §706(2) ("The reviewing court *shall* hold unlawful *and* set aside […]) with 5 U.S.C. §611(a)(4) (providing alterative remedies: remand and/or deferment); *see also Comcast Corp.*, 579 F.3d at 10, n. 1 [contrasting the statute in *Hecht Co. v. Bowles*, 321 U.S. 321 (1944) – which allowed for alternative forms of relief – with 5 U.S.C. §706(2)]. This is especially true considering the legislative history, as discussed above. *See* 142 Cong. Rec. S3242-02. [Stat. Addendum, at 22-31].

Plaintiffs under §611(a)(4)(A) and Section 212  which do not implicate the AIA in any form or fashion.

### 3. The *South Carolina v. Regan* exception applies to this case

Under *South Carolina v. Regan*, 465 U.S. 367 (1994) , the AIA does not apply where a plaintiff has no alternative forum in which to pursue her claims. *Id.*, at 373 (the AIA "was not intended to bar an action where, as here, Congress has not provided the plaintiff with an alternative legal way to challenge the validity of a tax." *Z Street.*, 791 F.3d at 31 (applying the *South Carolina* exception to the AIA).

Although Plaintiffs briefed this issue below, the district court did not address the argument in its decision.

Plaintiffs easily satisfy the *South Carolina* exception to the AIA because applying the AIA here would leave them with no alternative procedural mechanism for raising their RFA claims.  Plaintiffs do not have any GILTI tax liability and, hence, would never be able to bring any type of post-enforcement action.

Accordingly, the *South Carolina* exception applies, and the case is not barred by the AIA.

## CONCLUSION

For all the reasons above, the judgment below should be reversed.


<u>Date</u>: March 29, 2023


Respectfully submitted,


*/s/ L. Marc Zell*                    */s/ Noam Schreiber*

_____       _____
L. Marc Zell (Bar No. 28960)      Noam Schreiber (Bar No. 63387)
ZELL & ASSOCIATES                 34 Ben Yehuda St.
INTERNATIONAL ADVOCATES, LLC      14th Floor
1345 Ave. of the Americas         Jerusalem, Israel 9423001
2nd Floor                         011-972-2-633-6300
New York, NY 10105
(212)-971-1349                    *Email:* [noam.schreiber@fandz.com](mailto:noam.schreiber@fandz.com)

*Email:* [mzell@fandz.com](mailto:mzell@fandz.com)


*Counsel for Plaintiffs-Appellants*

24

## CERTIFICATE OF COMPLIANCE

### Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

   [**X**] this document contains 5,146 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [**X**] this document has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in Century Schoolbook 14.

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2023, a copy of the foregoing document was served electronically through the Court's ECF system on all counsel of record.

*/s/ Noam Schreiber*

_____
Noam Schreiber (Bar No. 63387)
ZELL, ARON & CO.
34 Ben Yehuda St.
14th Floor
Jerusalem, Israel 9423001
011-972-2-633-6300
*Email: [noam.schreiber@fandz.com](mailto:noam.schreiber@fandz.com)*

*Counsel for Plaintiffs-Appellants*