# UNITED STATES COURT OF APPEALS
## FOR THE
# DISTRICT OF COLUMBIA CIRCUIT

Case No. 22-5341

MONTE SILVER, ET AL.

*Plaintiffs-Appellants*,

-v-

INTERNAL REVENUE SERVICE, ET AL.

*Defendants-Appellees*

Appeal from the United States District Court
for the District of Columbia

## ADDENDUM TO APPELLANTS' OPENING BRIEF CONTAINING RELEVANT STATUTES AND REGULATIONS

# INDEX

| | |
|---|---|
| Regulatory Flexibility Act, 5 U.S.C. §601, *et seq.* | ADDENDUM 001-021 |
| 142 Cong. Rec. S3242 (daily ed. Mar. 29, 1996) | ADDENDUM 022-031 |
| 26 C.F.R. § 1.6038–5, Treas. Reg. §1.6038–5 | ADDENDUM 032-033 |



United States Code Annotated
    Title 5. Government Organization and Employees
        Part I. The Agencies Generally
            Chapter 6. The Analysis of Regulatory Functions

5 U.S.C.A. Pt. I, Ch. 6, Refs & Annos
Currentness

5 U.S.C.A. Pt. I, Ch. 6, Refs & Annos, 5 USCA Pt. I, Ch. 6, Refs & Annos
Current through P.L. 117-80.

**End of Document**                          © 2022 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 5. Government Organization and Employees (Refs & Annos)
    Part I. The Agencies Generally
      Chapter 6. The Analysis of Regulatory Functions (Refs & Annos)

5 U.S.C.A. § 601

§ 601. Definitions

Effective: March 29, 1996
Currentness

<For Executive Order No. 14002, "Economic Relief Related to the COVID-19 Pandemic", see Executive Order No. 14002, January 22, 2021, 86 F.R. 7229.>

For purposes of this chapter--

**(1)** the term "agency" means an agency as defined in section 551(1) of this title;

**(2)** the term "rule" means any rule for which the agency publishes a general notice of proposed rulemaking pursuant to section 553(b) of this title, or any other law, including any rule of general applicability governing Federal grants to State and local governments for which the agency provides an opportunity for notice and public comment, except that the term "rule" does not include a rule of particular applicability relating to rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services, or allowances therefor or to valuations, costs or accounting, or practices relating to such rates, wages, structures, prices, appliances, services, or allowances;

**(3)** the term "small business" has the same meaning as the term "small business concern" under section 3 of the Small Business Act, unless an agency, after consultation with the Office of Advocacy of the Small Business Administration and after opportunity for public comment, establishes one or more definitions of such term which are appropriate to the activities of the agency and publishes such definition(s) in the Federal Register;

**(4)** the term "small organization" means any not-for-profit enterprise which is independently owned and operated and is not dominant in its field, unless an agency establishes, after opportunity for public comment, one or more definitions of such term which are appropriate to the activities of the agency and publishes such definition(s) in the Federal Register;

**(5)** the term "small governmental jurisdiction" means governments of cities, counties, towns, townships, villages, school districts, or special districts, with a population of less than fifty thousand, unless an agency establishes, after opportunity for public comment, one or more definitions of such term which are appropriate to the activities of the agency and which are based on such factors as location in rural or sparsely populated areas or limited revenues due to the population of such jurisdiction, and publishes such definition(s) in the Federal Register;



**(6)** the term "small entity" shall have the same meaning as the terms "small business", "small organization" and "small governmental jurisdiction" defined in paragraphs (3), (4) and (5) of this section; and

**(7)** the term "collection of information"--

**(A)** means the obtaining, causing to be obtained, soliciting, or requiring the disclosure to third parties or the public, of facts or opinions by or for an agency, regardless of form or format, calling for either--

**(i)** answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, 10 or more persons, other than agencies, instrumentalities, or employees of the United States; or

**(ii)** answers to questions posed to agencies, instrumentalities, or employees of the United States which are to be used for general statistical purposes; and

**(B)** shall not include a collection of information described under section 3518(c)(1) of title 44, United States Code.

**(8) Recordkeeping requirement.**--The term "recordkeeping requirement" means a requirement imposed by an agency on persons to maintain specified records.

## CREDIT(S)

(Added Pub.L. 96-354, § 3(a), Sept. 19, 1980, 94 Stat. 1165; amended Pub.L. 104-121, Title II, § 241(a)(2), Mar. 29, 1996, 110 Stat. 864.)

5 U.S.C.A. § 601, 5 USCA § 601
Current through P.L. 117-80.

---

**End of Document**                               © 2022 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
   Title 5. Government Organization and Employees (Refs & Annos)
     Part I. The Agencies Generally
      Chapter 6. The Analysis of Regulatory Functions (Refs & Annos)

5 U.S.C.A. § 602

# § 602. Regulatory agenda

Currentness

**(a)** During the months of October and April of each year, each agency shall publish in the Federal Register a regulatory flexibility agenda which shall contain--

**(1)** a brief description of the subject area of any rule which the agency expects to propose or promulgate which is likely to have a significant economic impact on a substantial number of small entities;

**(2)** a summary of the nature of any such rule under consideration for each subject area listed in the agenda pursuant to paragraph (1), the objectives and legal basis for the issuance of the rule, and an approximate schedule for completing action on any rule for which the agency has issued a general notice of proposed rulemaking,[1] and

**(3)** the name and telephone number of an agency official knowledgeable concerning the items listed in paragraph (1).

**(b)** Each regulatory flexibility agenda shall be transmitted to the Chief Counsel for Advocacy of the Small Business Administration for comment, if any.

**(c)** Each agency shall endeavor to provide notice of each regulatory flexibility agenda to small entities or their representatives through direct notification or publication of the agenda in publications likely to be obtained by such small entities and shall invite comments upon each subject area on the agenda.

**(d)** Nothing in this section precludes an agency from considering or acting on any matter not included in a regulatory flexibility agenda, or requires an agency to consider or act on any matter listed in such agenda.

**CREDIT(S)**

(Added Pub.L. 96-354, § 3(a), Sept. 19, 1980, 94 Stat. 1166.)

Footnotes

1      So in original. The comma probably should be a semicolon.

5 U.S.C.A. § 602, 5 USCA § 602

Current through P.L. 117-80.

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2022 Thomson Reuters. No claim to original U.S. Government Works.                    2



United States Code Annotated
  Title 5. Government Organization and Employees (Refs & Annos)
    Part I. The Agencies Generally
      Chapter 6. The Analysis of Regulatory Functions (Refs & Annos)

5 U.S.C.A. § 603

## § 603. Initial regulatory flexibility analysis

Currentness

**(a)** Whenever an agency is required by section 553 of this title, or any other law, to publish general notice of proposed rulemaking for any proposed rule, or publishes a notice of proposed rulemaking for an interpretative rule involving the internal revenue laws of the United States, the agency shall prepare and make available for public comment an initial regulatory flexibility analysis. Such analysis shall describe the impact of the proposed rule on small entities. The initial regulatory flexibility analysis or a summary shall be published in the Federal Register at the time of the publication of general notice of proposed rulemaking for the rule. The agency shall transmit a copy of the initial regulatory flexibility analysis to the Chief Counsel for Advocacy of the Small Business Administration. In the case of an interpretative rule involving the internal revenue laws of the United States, this chapter applies to interpretative rules published in the Federal Register for codification in the Code of Federal Regulations, but only to the extent that such interpretative rules impose on small entities a collection of information requirement.

**(b)** Each initial regulatory flexibility analysis required under this section shall contain--

  **(1)** a description of the reasons why action by the agency is being considered;

  **(2)** a succinct statement of the objectives of, and legal basis for, the proposed rule;

  **(3)** a description of and, where feasible, an estimate of the number of small entities to which the proposed rule will apply;

  **(4)** a description of the projected reporting, recordkeeping and other compliance requirements of the proposed rule, including an estimate of the classes of small entities which will be subject to the requirement and the type of professional skills necessary for preparation of the report or record;

  **(5)** an identification, to the extent practicable, of all relevant Federal rules which may duplicate, overlap or conflict with the proposed rule.

**(c)** Each initial regulatory flexibility analysis shall also contain a description of any significant alternatives to the proposed rule which accomplish the stated objectives of applicable statutes and which minimize any significant economic impact of the proposed rule on small entities. Consistent with the stated objectives of applicable statutes, the analysis shall discuss significant alternatives such as--

USCA Case #22-5341      Document #1992195      Filed: 03/29/2023      Page 9 of 35



**(1)** the establishment of differing compliance or reporting requirements or timetables that take into account the resources available to small entities;

**(2)** the clarification, consolidation, or simplification of compliance and reporting requirements under the rule for such small entities;

**(3)** the use of performance rather than design standards; and

**(4)** an exemption from coverage of the rule, or any part thereof, for such small entities.

**(d)(1)** For a covered agency, as defined in section 609(d)(2), each initial regulatory flexibility analysis shall include a description of--

**(A)** any projected increase in the cost of credit for small entities;

**(B)** any significant alternatives to the proposed rule which accomplish the stated objectives of applicable statutes and which minimize any increase in the cost of credit for small entities; and

**(C)** advice and recommendations of representatives of small entities relating to issues described in subparagraphs (A) and (B) and subsection (b).

**(2)** A covered agency, as defined in section 609(d)(2), shall, for purposes of complying with paragraph (1)(C)--

**(A)** identify representatives of small entities in consultation with the Chief Counsel for Advocacy of the Small Business Administration; and

**(B)** collect advice and recommendations from the representatives identified under subparagraph (A) relating to issues described in subparagraphs (A) and (B) of paragraph (1) and subsection (b).

**CREDIT(S)**

(Added Pub.L. 96-354, § 3(a), Sept. 19, 1980, 94 Stat. 1166; amended Pub.L. 104-121, Title II, § 241(a)(1), Mar. 29, 1996, 110 Stat. 864; Pub.L. 111-203, Title X, § 1100G(b), July 21, 2010, 124 Stat. 2112.)

5 U.S.C.A. § 603, 5 USCA § 603
Current through P.L. 117-80.

---

**End of Document**                                                      © 2022 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
   Title 5. Government Organization and Employees (Refs & Annos)
      Part I. The Agencies Generally
         Chapter 6. The Analysis of Regulatory Functions (Refs & Annos)

5 U.S.C.A. § 604

## § 604. Final regulatory flexibility analysis

Effective: July 21, 2011

Currentness

**(a)** When an agency promulgates a final rule under section 553 of this title, after being required by that section or any other law to publish a general notice of proposed rulemaking, or promulgates a final interpretative rule involving the internal revenue laws of the United States as described in section 603(a), the agency shall prepare a final regulatory flexibility analysis. Each final regulatory flexibility analysis shall contain--

**(1)** a statement of the need for, and objectives of, the rule;

**(2)** a statement of the significant issues raised by the public comments in response to the initial regulatory flexibility analysis, a statement of the assessment of the agency of such issues, and a statement of any changes made in the proposed rule as a result of such comments;

**(3)** the response of the agency to any comments filed by the Chief Counsel for Advocacy of the Small Business Administration in response to the proposed rule, and a detailed statement of any change made to the proposed rule in the final rule as a result of the comments;

**(4)** a description of and an estimate of the number of small entities to which the rule will apply or an explanation of why no such estimate is available;

**(5)** a description of the projected reporting, recordkeeping and other compliance requirements of the rule, including an estimate of the classes of small entities which will be subject to the requirement and the type of professional skills necessary for preparation of the report or record;

**(6)**[1] a description of the steps the agency has taken to minimize the significant economic impact on small entities consistent with the stated objectives of applicable statutes, including a statement of the factual, policy, and legal reasons for selecting the alternative adopted in the final rule and why each one of the other significant alternatives to the rule considered by the agency which affect the impact on small entities was rejected; and

**(6)**[1] for a covered agency, as defined in section 609(d)(2), a description of the steps the agency has taken to minimize any additional cost of credit for small entities.



**(b)** The agency shall make copies of the final regulatory flexibility analysis available to members of the public and shall publish in the Federal Register such analysis or a summary thereof.

### CREDIT(S)

(Added Pub.L. 96-354, § 3(a), Sept. 19, 1980, 94 Stat. 1167; amended Pub.L. 104-121, Title II, § 241(b), Mar. 29, 1996, 110 Stat. 864; Pub.L. 111-203, Title X, § 1100G(c), July 21, 2010, 124 Stat. 2113; Pub.L. 111-240, Title I, § 1601, Sept. 27, 2010, 124 Stat. 2551.)

Footnotes

1       So in original. Two pars. (6) were enacted.

5 U.S.C.A. § 604, 5 USCA § 604

Current through P.L. 117-80.

---

**End of Document**                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.



United States Code Annotated
   Title 5. Government Organization and Employees (Refs & Annos)
      Part I. The Agencies Generally
         Chapter 6. The Analysis of Regulatory Functions (Refs & Annos)

5 U.S.C.A. § 605

## § 605. Avoidance of duplicative or unnecessary analyses

Currentness

**(a)** Any Federal agency may perform the analyses required by sections 602, 603, and 604 of this title in conjunction with or as a part of any other agenda or analysis required by any other law if such other analysis satisfies the provisions of such sections.

**(b)** Sections 603 and 604 of this title shall not apply to any proposed or final rule if the head of the agency certifies that the rule will not, if promulgated, have a significant economic impact on a substantial number of small entities. If the head of the agency makes a certification under the preceding sentence, the agency shall publish such certification in the Federal Register at the time of publication of general notice of proposed rulemaking for the rule or at the time of publication of the final rule, along with a statement providing the factual basis for such certification. The agency shall provide such certification and statement to the Chief Counsel for Advocacy of the Small Business Administration.

**(c)** In order to avoid duplicative action, an agency may consider a series of closely related rules as one rule for the purposes of sections 602, 603, 604 and 610 of this title.

### CREDIT(S)

(Added Pub.L. 96-354, § 3(a), Sept. 19, 1980, 94 Stat. 1167; amended Pub.L. 104-121, Title II, § 243(a), Mar. 29, 1996, 110 Stat. 866.)

5 U.S.C.A. § 605, 5 USCA § 605
Current through P.L. 117-80.

**End of Document**     © 2022 Thomson Reuters. No claim to original U.S. Government Works.

  © 2022 Thomson Reuters. No claim to original U.S. Government Works.

011

United States Code Annotated
  Title 5. Government Organization and Employees (Refs & Annos)
    Part I. The Agencies Generally
      Chapter 6. The Analysis of Regulatory Functions (Refs & Annos)

5 U.S.C.A. § 606

## § 606. Effect on other law

Currentness

The requirements of sections 603 and 604 of this title do not alter in any manner standards otherwise applicable by law to agency action.

**CREDIT(S)**

(Added Pub.L. 96-354, § 3(a), Sept. 19, 1980, 94 Stat. 1168.)

5 U.S.C.A. § 606, 5 USCA § 606
Current through P.L. 117-80.

**End of Document**                                        © 2022 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
 Title 5. Government Organization and Employees (Refs & Annos)
  Part I. The Agencies Generally
   Chapter 6. The Analysis of Regulatory Functions (Refs & Annos)

5 U.S.C.A. § 607

§ 607. Preparation of analyses

Currentness

In complying with the provisions of sections 603 and 604 of this title, an agency may provide either a quantifiable or numerical description of the effects of a proposed rule or alternatives to the proposed rule, or more general descriptive statements if quantification is not practicable or reliable.

**CREDIT(S)**

(Added Pub.L. 96-354, § 3(a), Sept. 19, 1980, 94 Stat. 1168.)

5 U.S.C.A. § 607, 5 USCA § 607
Current through P.L. 117-80.

**End of Document**                                     © 2022 Thomson Reuters. No claim to original U.S. Government Works.

013

United States Code Annotated
   Title 5. Government Organization and Employees (Refs & Annos)
      Part I. The Agencies Generally
         Chapter 6. The Analysis of Regulatory Functions (Refs & Annos)

5 U.S.C.A. § 608

## § 608. Procedure for waiver or delay of completion

Currentness

**(a)** An agency head may waive or delay the completion of some or all of the requirements of section 603 of this title by publishing in the Federal Register, not later than the date of publication of the final rule, a written finding, with reasons therefor, that the final rule is being promulgated in response to an emergency that makes compliance or timely compliance with the provisions of section 603 of this title impracticable.

**(b)** Except as provided in section 605(b), an agency head may not waive the requirements of section 604 of this title. An agency head may delay the completion of the requirements of section 604 of this title for a period of not more than one hundred and eighty days after the date of publication in the Federal Register of a final rule by publishing in the Federal Register, not later than such date of publication, a written finding, with reasons therefor, that the final rule is being promulgated in response to an emergency that makes timely compliance with the provisions of section 604 of this title impracticable. If the agency has not prepared a final regulatory analysis pursuant to section 604 of this title within one hundred and eighty days from the date of publication of the final rule, such rule shall lapse and have no effect. Such rule shall not be repromulgated until a final regulatory flexibility analysis has been completed by the agency.

**CREDIT(S)**

(Added Pub.L. 96-354, § 3(a), Sept. 19, 1980, 94 Stat. 1168.)

5 U.S.C.A. § 608, 5 USCA § 608
Current through P.L. 117-80.

---

**End of Document** 

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

014

United States Code Annotated
    Title 5. Government Organization and Employees (Refs & Annos)
        Part I. The Agencies Generally
            Chapter 6. The Analysis of Regulatory Functions (Refs & Annos)

5 U.S.C.A. § 609

## § 609. Procedures for gathering comments

Currentness

**(a)** When any rule is promulgated which will have a significant economic impact on a substantial number of small entities, the head of the agency promulgating the rule or the official of the agency with statutory responsibility for the promulgation of the rule shall assure that small entities have been given an opportunity to participate in the rulemaking for the rule through the reasonable use of techniques such as--

**(1)** the inclusion in an advanced notice of proposed rulemaking, if issued, of a statement that the proposed rule may have a significant economic effect on a substantial number of small entities;

**(2)** the publication of general notice of proposed rulemaking in publications likely to be obtained by small entities;

**(3)** the direct notification of interested small entities;

**(4)** the conduct of open conferences or public hearings concerning the rule for small entities including soliciting and receiving comments over computer networks; and

**(5)** the adoption or modification of agency procedural rules to reduce the cost or complexity of participation in the rulemaking by small entities.

**(b)** Prior to publication of an initial regulatory flexibility analysis which a covered agency is required to conduct by this chapter--

**(1)** a covered agency shall notify the Chief Counsel for Advocacy of the Small Business Administration and provide the Chief Counsel with information on the potential impacts of the proposed rule on small entities and the type of small entities that might be affected;

**(2)** not later than 15 days after the date of receipt of the materials described in paragraph (1), the Chief Counsel shall identify individuals representative of affected small entities for the purpose of obtaining advice and recommendations from those individuals about the potential impacts of the proposed rule;

**(3)** the agency shall convene a review panel for such rule consisting wholly of full time Federal employees of the office within the agency responsible for carrying out the proposed rule, the Office of Information and Regulatory Affairs within the Office of Management and Budget, and the Chief Counsel;

**(4)** the panel shall review any material the agency has prepared in connection with this chapter, including any draft proposed rule, collect advice and recommendations of each individual small entity representative identified by the agency after consultation with the Chief Counsel, on issues related to subsections 603(b), paragraphs (3), (4) and (5) and 603(c);

**(5)** not later than 60 days after the date a covered agency convenes a review panel pursuant to paragraph (3), the review panel shall report on the comments of the small entity representatives and its findings as to issues related to subsections 603(b), paragraphs (3), (4) and (5) and 603(c), provided that such report shall be made public as part of the rulemaking record; and

**(6)** where appropriate, the agency shall modify the proposed rule, the initial regulatory flexibility analysis or the decision on whether an initial regulatory flexibility analysis is required.

**(c)** An agency may in its discretion apply subsection (b) to rules that the agency intends to certify under subsection 605(b), but the agency believes may have a greater than de minimis impact on a substantial number of small entities.

**(d)** For purposes of this section, the term "covered agency" means--

**(1)** the Environmental Protection Agency;

**(2)** the Consumer Financial Protection Bureau of the Federal Reserve System; and

**(3)** the Occupational Safety and Health Administration of the Department of Labor.

**(e)** The Chief Counsel for Advocacy, in consultation with the individuals identified in subsection (b)(2), and with the Administrator of the Office of Information and Regulatory Affairs within the Office of Management and Budget, may waive the requirements of subsections (b)(3), (b)(4), and (b)(5) by including in the rulemaking record a written finding, with reasons therefor, that those requirements would not advance the effective participation of small entities in the rulemaking process. For purposes of this subsection, the factors to be considered in making such a finding are as follows:

**(1)** In developing a proposed rule, the extent to which the covered agency consulted with individuals representative of affected small entities with respect to the potential impacts of the rule and took such concerns into consideration.

**(2)** Special circumstances requiring prompt issuance of the rule.

**(3)** Whether the requirements of subsection (b) would provide the individuals identified in subsection (b)(2) with a competitive advantage relative to other small entities.

USCA Case #22-5341    Document #1992195        Filed: 03/29/2023      Page 18 of 35

016

**CREDIT(S)**

(Added Pub.L. 96-354, § 3(a), Sept. 19, 1980, 94 Stat. 1168; amended Pub.L. 104-121, Title II, § 244(a), Mar. 29, 1996, 110 Stat. 867; Pub.L. 111-203, Title X, § 1100G(a), July 21, 2010, 124 Stat. 2112.)

5 U.S.C.A. § 609, 5 USCA § 609
Current through P.L. 117-80.

**End of Document**                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 5. Government Organization and Employees (Refs & Annos)
    Part I. The Agencies Generally
      Chapter 6. The Analysis of Regulatory Functions (Refs & Annos)

5 U.S.C.A. § 610

## § 610. Periodic review of rules

Currentness

**(a)** Within one hundred and eighty days after the effective date of this chapter, each agency shall publish in the Federal Register a plan for the periodic review of the rules issued by the agency which have or will have a significant economic impact upon a substantial number of small entities. Such plan may be amended by the agency at any time by publishing the revision in the Federal Register. The purpose of the review shall be to determine whether such rules should be continued without change, or should be amended or rescinded, consistent with the stated objectives of applicable statutes, to minimize any significant economic impact of the rules upon a substantial number of such small entities. The plan shall provide for the review of all such agency rules existing on the effective date of this chapter within ten years of that date and for the review of such rules adopted after the effective date of this chapter within ten years of the publication of such rules as the final rule. If the head of the agency determines that completion of the review of existing rules is not feasible by the established date, he shall so certify in a statement published in the Federal Register and may extend the completion date by one year at a time for a total of not more than five years.

**(b)** In reviewing rules to minimize any significant economic impact of the rule on a substantial number of small entities in a manner consistent with the stated objectives of applicable statutes, the agency shall consider the following factors--

**(1)** the continued need for the rule;

**(2)** the nature of complaints or comments received concerning the rule from the public;

**(3)** the complexity of the rule;

**(4)** the extent to which the rule overlaps, duplicates or conflicts with other Federal rules, and, to the extent feasible, with State and local governmental rules; and

**(5)** the length of time since the rule has been evaluated or the degree to which technology, economic conditions, or other factors have changed in the area affected by the rule.

**(c)** Each year, each agency shall publish in the Federal Register a list of the rules which have a significant economic impact on a substantial number of small entities, which are to be reviewed pursuant to this section during the succeeding twelve months. The list shall include a brief description of each rule and the need for and legal basis of such rule and shall invite public comment upon the rule.

**CREDIT(S)**

(Added Pub.L. 96-354, § 3(a), Sept. 19, 1980, 94 Stat. 1169.)

5 U.S.C.A. § 610, 5 USCA § 610
Current through P.L. 117-80.

End of Document                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

| United States Code Annotated |
| --- |
| Title 5. Government Organization and Employees (Refs & Annos) |
| Part I. The Agencies Generally |
| Chapter 6. The Analysis of Regulatory Functions (Refs & Annos) |

5 U.S.C.A. § 611

## § 611. Judicial review

### Currentness

**(a)(1)** For any rule subject to this chapter, a small entity that is adversely affected or aggrieved by final agency action is entitled to judicial review of agency compliance with the requirements of sections 601, 604, 605(b), 608(b), and 610 in accordance with chapter 7. Agency compliance with sections 607 and 609(a) shall be judicially reviewable in connection with judicial review of section 604.

**(2)** Each court having jurisdiction to review such rule for compliance with section 553, or under any other provision of law, shall have jurisdiction to review any claims of noncompliance with sections 601, 604, 605(b), 608(b), and 610 in accordance with chapter 7. Agency compliance with sections 607 and 609(a) shall be judicially reviewable in connection with judicial review of section 604.

**(3)(A)** A small entity may seek such review during the period beginning on the date of final agency action and ending one year later, except that where a provision of law requires that an action challenging a final agency action be commenced before the expiration of one year, such lesser period shall apply to an action for judicial review under this section.

**(B)** In the case where an agency delays the issuance of a final regulatory flexibility analysis pursuant to section 608(b) of this chapter, an action for judicial review under this section shall be filed not later than--

**(i)** one year after the date the analysis is made available to the public, or

**(ii)** where a provision of law requires that an action challenging a final agency regulation be commenced before the expiration of the 1-year period, the number of days specified in such provision of law that is after the date the analysis is made available to the public.

**(4)** In granting any relief in an action under this section, the court shall order the agency to take corrective action consistent with this chapter and chapter 7, including, but not limited to--

**(A)** remanding the rule to the agency, and

**(B)** deferring the enforcement of the rule against small entities unless the court finds that continued enforcement of the rule is in the public interest.



**(5)** Nothing in this subsection shall be construed to limit the authority of any court to stay the effective date of any rule or provision thereof under any other provision of law or to grant any other relief in addition to the requirements of this section.

**(b)** In an action for the judicial review of a rule, the regulatory flexibility analysis for such rule, including an analysis prepared or corrected pursuant to paragraph (a)(4), shall constitute part of the entire record of agency action in connection with such review.

**(c)** Compliance or noncompliance by an agency with the provisions of this chapter shall be subject to judicial review only in accordance with this section.

**(d)** Nothing in this section bars judicial review of any other impact statement or similar analysis required by any other law if judicial review of such statement or analysis is otherwise permitted by law.

**CREDIT(S)**

(Added Pub.L. 96-354, § 3(a), Sept. 19, 1980, 94 Stat. 1169; amended Pub.L. 104-121, Title II, § 242, Mar. 29, 1996, 110 Stat. 865.)

5 U.S.C.A. § 611, 5 USCA § 611
Current through P.L. 117-80.

---

**End of Document**                                           © 2022 Thomson Reuters. No claim to original U.S. Government Works.

021

> United States Code Annotated
>    Title 5. Government Organization and Employees (Refs & Annos)
>       Part I. The Agencies Generally
>          Chapter 6. The Analysis of Regulatory Functions (Refs & Annos)

5 U.S.C.A. § 612

# § 612. Reports and intervention rights

## Currentness

**(a)** The Chief Counsel for Advocacy of the Small Business Administration shall monitor agency compliance with this chapter and shall report at least annually thereon to the President and to the Committees on the Judiciary and Small Business of the Senate and House of Representatives.

**(b)** The Chief Counsel for Advocacy of the Small Business Administration is authorized to appear as amicus curiae in any action brought in a court of the United States to review a rule. In any such action, the Chief Counsel is authorized to present his or her views with respect to compliance with this chapter, the adequacy of the rulemaking record with respect to small entities and the effect of the rule on small entities.

**(c)** A court of the United States shall grant the application of the Chief Counsel for Advocacy of the Small Business Administration to appear in any such action for the purposes described in subsection (b).

### CREDIT(S)

(Added Pub.L. 96-354, § 3(a), Sept. 19, 1980, 94 Stat. 1170; amended Pub.L. 104-121, Title II, § 243(b), Mar. 29, 1996, 110 Stat. 866.)

5 U.S.C.A. § 612, 5 USCA § 612
Current through P.L. 117-80.

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2022 Thomson Reuters. No claim to original U.S. Government Works.   1

142 Cong. Rec. S3242-02, 142 Cong. Rec. S3242-02 (1996)

USCA Case #22-5341    Document #1992195        Filed: 03/29/2023      Page 24 of 35



142 Cong. Rec. S3242-02, 1996 WL 142887
Congressional Record --- Senate
Proceedings and Debates of the 104th Congress, Second Session
Friday, March 29, 1996

**\*S3242**  SMALL BUSINESS REGULATORY ENFORCEMENT FAIRNESS ACT

Mr. BOND.

Mr. President, on March 19th by a vote of 100 to 0, the Senate passed S. 942, the Small Business Regulatory Enforcement Fairness Act, legislation to implement some of the most important recommendations of the White House Conference on Small Business. Yesterday, the House passed H.R. 3136, the Contract With America Advancement Act of 1996 which incorporates the Small Business Regulatory Enforcement Fairness Act as amended in the House by the Hyde amendment. The Senate has now approved H.R. 3136 by unanimous consent and Senator BUMPERS and I would like to take this opportunity to further explain the purpose of the act. On March 15, we gave a detailed explanation of the managers amendment adopted by the Senate prior to passage of S. 942. The amendment offered by Representative HYDE is substantially similar to S. 942 as passed by the Senate.

Three changes are worth noting. First, the amendments to the Equal Access to Justice Act were revised by the House to take into account some of the concerns raised by the administration in the Statement of Administration Position. The new language embodies the intent of our managers amendment but clarifies that attorneys fees would be awarded when there is an unreasonably large difference between an agency demand and the final outcome of the case. Second, the House dropped the second phase of the Small Business Advocacy Review Panels. Thus the panels now only apply at the proposal stage of EPA and OSHA rulemakings. Finally the time period for the congressional review of regulations, adopted as part of the Nickles-Reid amendment, was extended from 45 to 60 days. We expect the authors of the Nickles-Reid amendment will have a detailed explanation of the Congressional Review Subtitle.

In order to provide additional guidance for agencies to comply with the requirements of the Small Business Regulatory Enforcement Fairness Act, I ask to have printed in the RECORD a section-by-section analysis of the subtitles A through D of act as modified by the Hyde amendment. Since there will not be a conference report on the act, this statement and a companion statement in the House should serve as the best legislative history of the legislation as finally enacted.

There being no objection, the material was ordered to be printed in the RECORD, as follows:

SMALL BUSINESS REGULATORY ENFORCEMENT FAIRNESS ACT-JOINT MANAGERS
STATEMENT OF LEGISLATIVE HISTORY AND CONGRESSIONAL INTENT

I. SUMMARY OF THE LEGISLATION

The Hyde amendment to H.R. 3136 replaces Title III of the Contract with America Advancement Act of 1996 to incorporate a revised version of the Small Business Regulatory Enforcement Fairness Act of 1996 (the ''Act''). This legislation was originally passed by the Senate as S. 942. The Hyde amendment makes a number of changes to the Senate bill to better implement certain recommendations of the 1995 White House Conference on Small Business regarding the development and enforcement of Federal regulations, including judicial review of agency actions under the Regulatory Flexibility Act (RFA). The amendment also provides for expedited procedures for Congress to review agency rules and to enact Resolutions of Disapproval voiding agency rules.



USCA Case #22-5341    Document #1992195    Filed: 03/29/2023    Page 25 of 35

The goal of the legislation is to foster a more cooperative, less threatening regulatory environment among agencies, small businesses and other small entities. The legislation provides a framework to make federal regulators more accountable for their enforcement actions by providing small entities with an opportunity for redress of arbitrary enforcement actions. The centerpiece of the legislation is the RFA which requires a regulatory flexibility analysis of all rules that have a "significant economic impact on a substantial number" of small entities. Under the RFA, this term "small entities" includes small businesses, small non-profit organizations, and small governmental units.

## II. SECTION-BY-SECTION ANALYSIS

### Section 301

This section entitles the Act the "Small Business Regulatory Enforcement Fairness Act of 1996."

### Section 302

The Act makes findings as to the need for a strong small business sector, the disproportionate impact of regulations on small businesses, the recommendations of the 1995 White House Conference on Small Business, and the need for judicial review of the Regulatory Flexibility Act.

### Section 303

The purpose of the Act is to address some of the key federal regulatory recommendations of the 1995 White House Conference on Small Business. The White House Conference produced a consensus that small businesses should be included earlier and more effectively in the regulatory process. The Act seeks to create a more cooperative and less threatening regulatory environment to help small businesses in their compliance efforts. The Act also provides small businesses with legal redress from arbitrary enforcement actions by making federal regulators accountable for their actions.

### Subtitle A-Regulatory Compliance Simplification

### Section 311

This section defines certain terms as used in the subtitle. The term "small entity" is currently defined in the RFA to include small business concerns, as defined by the Small Business Act, small nonprofit organizations and small governmental jurisdictions. The process of determining whether a given business qualifies as a small entity is straightforward, using thresholds established by the SBA for Standard Industrial Classification codes. The RFA also defines small organization and small governmental jurisdiction. Any definition established by an agency for purposes of implementing the RFA would also apply to this Act.

### *S3243  Section 312

The Act requires agencies to publish "small entity compliance guides" to assist small entities in complying with regulations which are the subject of a required Reg Flex analysis. The bill does not allow judicial review of the guide itself. However, the agency's claim that the guide provides "plain English" assistance would be a matter of public record. In addition, the small business compliance guide would be available as evidence of the reasonableness of any proposed fine on the small entity.



Agencies should endeavor to make these "plain English" guides available to small entities through a coordinated distribution system for regulatory compliance information utilizing means such as the SBA's U.S. Business Advisor, the Small Business Ombudsman at the Environmental Protection Agency, state-run compliance assistance programs established under section 507 of the Clean Air Act, Manufacturing Technology Centers or Small Business Development Centers established under the Small Business Act.

## Section 313

The Act directs agencies that regulate small entities to answer inquiries of small entities seeking information on and advice about regulatory compliance. Some agencies already have established successful programs to provide compliance assistance and the amendment intends to encourage these efforts. For example, the IRS, SEC and the Customs Service have an established practice of issuing private letter rulings applying the laws to a particular set of facts. This legislation does not require other agencies to establish programs with the same level of formality as found in the current practice of issuing private letter rulings. The use of toll free telephone numbers and other informal means of responding to small entities is encouraged. This legislation does not mandate changes in current programs at the IRS, SEC and Customs Service, but these agencies should consider establishing less formal means of providing small entities with informal guidance in accordance with this section.

The Act gives agencies discretion to establish procedures and conditions under which they would provide advice to small entities. There is no requirement that the agency's advice to small businesses be binding as to the legal effects of the actions of other entities. Any guidance provided by the agency applying statutory or regulatory provisions to facts supplied by the small entity would be available as relevant evidence of the reasonableness of any subsequently proposed fine on the small entity.

## Section 314

The Act creates permissive authority for Small Business Development Centers (SBDC) to provide information to small entities regarding compliance with regulatory requirements. SBDC's would not become the single-point source of regulatory information, but would supplement agency efforts to make this information widely available. This section is not intended to grant an exclusive franchise to SBDC's for providing information on regulatory compliance.

There are small business information and technical assistance programs, both federal and state, in various forms in different states. Some of the manufacturing technology centers and other similar extension programs administered by the National Institute of Standards and Technology are providing environmental compliance assistance in addition to general technology assistance. The small business stationary source technical and environmental compliance assistance programs established under section 507 of the Clean Air Act Amendments of 1990 is also providing compliance assistance to small businesses. This section is designed to add to the currently available resources to small businesses.

Compliance assistance programs can save small businesses money, improve their environmental performance and increase their competitiveness. They can help small businesses learn about cost-saving pollution prevention programs and new environmental technologies. Most importantly, they can help small business owners avoid potentially costly regulatory citations and adjudications. Comments from small business representatives in a variety of fora support the need for expansion of technical assistance programs.

## Section 315

142 Cong. Rec. S3242-02, 142 Cong. Rec. S3242-02 (1996)

USCA Case #22-5341    Document #1992195    Filed: 03/29/2023    Page 27 of 35


This section directs agencies to cooperate with states to create guides that fully integrate federal and state requirements on small businesses. Separate guides may be created for each state, or states may modify or supplement a guide to federal requirements. Since different types of small businesses are affected by different agency regulations, or are affected in different ways, agencies should consider preparing separate guides for the various sectors of the small business community subject to their jurisdiction. Priority in producing these guides should be given to areas of law where rules are complex and where businesses tend to be small. Agencies may contract with outside entities to produce these guides and, to the extent practicable, agencies should utilize entities with the greatest experience in developing similar guides.

Section 316

This section provides that the effective date for the subtitle is 90 days after the date of enactment. The requirement for agencies to publish compliance guides applies to final rules published after the effective date. Agencies have one year from the date of enactment to develop their programs for informal small entity guidance, but these programs should assist small entities with regulatory questions regardless of the date of publication of the regulation at issue.

Subtitle B-Regulatory Enforcement Reforms

Section 321

This section provides definitions for the terms as used in the subtitle.

Section 322

The Act creates a Small Business and Agriculture Regulatory Enforcement Ombudsman at the SBA to give small businesses a confidential means to comment on the enforcement activity of agency enforcement activities. This might include providing toll-free telephone numbers, computer access points, or mail-in forms allowing businesses to comment on the enforcement activities of inspectors, auditors and other enforcement personnel. As used in this section of the bill, the term "audit" is not intended to refer to audits conducted by Inspectors General. This Ombudsman would not replace or diminish any similar ombudsman programs in other agencies.

Concerns have arisen in the Inspector General community that those Ombudsmen might have new enforcement powers that would conflict with those currently held by the Inspector Generals. Nothing in the Act is intended to supersede or conflict with the provisions of the Inspector General Act of 1978, as amended, or to otherwise restrict or interfere with the activities of any Office of the Inspector General.

The Ombudsman will compile the comments of small businesses and provide an annual evaluation similar to a "customer satisfaction" rating for different agencies, regions, or offices. The goal of this rating system is to see whether agencies and their personnel are in fact treating small businesses more like customers than potential criminals. Agencies will be provided an opportunity to comment on the Ombudsman's draft report, is currently the practice with reports by the General Accounting Office. The final report may include a section in which an agency can address any concerns that the Ombudsman does not choose to address.

The Act states that the Ombudsman shall "work with each agency with regulatory authority over small businesses to ensure that small business concerns that receive or are subject to an audit, on-site inspection, compliance assistance effort, or other enforcement related communication or contact by agency personnel are provided with a means to comment on the enforcement activity conducted by such personnel." The SBA shall



USCA Case #22-5341    Document #1992195    Filed: 03/29/2023    Page 28 of 35

publicize the existence of the Ombudsman generally to the small business community and also work cooperatively with enforcement agencies to make small businesses aware of the program at the time of agency enforcement activity. The Ombudsman shall report annually to Congress based on substantiated comments received from small business concerns and the Boards, evaluating the enforcement activities of agency personnel including a rating of the responsiveness to small business of the various regional and program offices of each agency. The report to Congress shall in part be based on the findings and recommendation of the Boards as reported by the Ombudsman to affected agencies. While this language allows for comment on the enforcement activities of agency personnel in order to identify potential abuses of the regulatory process, it does not provide a mandate for the boards and the Ombudsman to create a public performance rating of individual agency employees.

The goal of this section is to reduce the instances of excessive and abusive enforcement actions. Those actions clearly originate in the acts of individual enforcement personnel. Sometimes the problem is with the policies of an agency, and the goal of this section is also to change the culture and policies of Federal regulatory agencies. At other times, the problem is not agency policy, but individuals who violate the agency's enforcement policy. To address this issue, the legislation includes a provision to allow the Ombudsman, where appropriate, to refer serious problems with individuals to the agency's Inspector General for proper action.

The intent of the Act is to give small businesses a voice in evaluating the overall performances of agencies and agency offices in their dealings with the small business community. The purpose of the Ombudsman's reports is not to rate individual agency personnel, but to assess each program's or agency's performance as a whole. The Ombudsman's report to Congress should not single out individual agency employees by name or assign an individual evaluation or rating that might interfere with agency management and personnel policies.

The Act also creates Regional Small Business Regulatory Fairness Boards at the SBA to coordinate with the Ombudsman and to provide small businesses a greater opportunity to track and comment on agency enforcement policies and practices. These boards provide an opportunity for representatives of small businesses to come together on a regional basis to assess the enforcement activities of the various federal regulatory agencies. The boards may meet to collect information about these activities, and report **\*S3244** and make recommendations to the Ombudsman about the impact of agency enforcement policies or practices on small businesses. The boards will consist of owners, operators or officers of small entities who are appointed by the Administrator of the Small Business Administration. Prior to appointing any board members, the Administrator must consult with the leadership of the Congressional Small Business Committees. There is nothing in the bill that would exempt the boards from the Federal Advisory Committee Act, which would apply according to its terms. The Boards may accept donations of services such as the use of a regional SBA office for conducting their meetings.

Section 323

The Act directs all federal agencies that regulate small businesses to develop policies or programs providing for waivers or reductions of civil penalties for violations by small businesses in certain circumstances. This section builds on the current Executive Order on small business enforcement practices and is intended to allow agencies flexibility to tailor their specific programs to their missions and charters. Agencies should also consider the ability of a small entity to pay in determining penalty assessments under appropriate circumstances. Each agency would have discretion to condition and limit the policy or program on appropriate conditions. For purposes of illustration, these could include requiring the small business to act in good faith, requiring that violations be discovered through participation in agency supported compliance assistance programs, or requiring that violations be corrected within a reasonable time.

An agency's policy or program could also provide for suitable exclusions. Again, for purposes of illustration, these could include circumstances where the small entity has been subject to multiple enforcement actions,



the violation involves criminal conduct, or poses a grave threat to worker safety, public health, safety or the environment.

In establishing their programs, it is up to each agency to develop the boundaries of their program and the specific circumstances for providing for a waiver or reduction of penalties, but once establish, an agency must implement its program in an evenhanded fashion. Agencies may distinguish among types of small entities and among classes of civil penalties. Some agencies have already established formal or informal policies or programs that would meet the requirements of this section. For example, the Environmental Protection Agency has adopted a small business enforcement policy that satisfies this section. While this legislation sets out a general requirement to establish penalty waiver and reduction programs, some agencies may be subject to other statutory requirements or limitations applicable to the agency or to a particular program. For example, this section is not intended to override, amend or affect provisions of the Occupational Health and Safety Act or the Mine Safety and Health Act that may impose specific limitations on the operation of penalty reduction or waiver programs.

Section 324

This section provides that the subtitle takes effect 90 days after the date of enactment.

Subtitle C-Equal Access to Justice Act Amendments

Sections 331 & 332

The Act amends the Equal Access to Justice Act to assist eligible small businesses in recovering their attorneys fees and expenses in certain instances when unreasonable agency demands for fines or civil penalties in enforcement actions are not sustained by the court or by an administrative law judge. While this is a significant change from current law, the legislation is not intended to result in the awarding of attorneys fees as a matter of course. Rather, the legislation is intended to assist in changing the culture among government regulators to increase the reasonableness and fairness of their enforcement practices. Past agency practice too often has been to treat small businesses like suspects. One goal of this bill is to encourage government regulatory agencies to treat small businesses as partners sharing in a common goal of informed regulatory compliance. Government enforcement attorneys often take the position that they must zealously advocate for their client, in this case a regulatory agency, to the maximum extent permitted by law, as if they were representing an individual or other private party. But in the new regulatory climate for small businesses under this legislation, government attorneys with the advantages and resources of the federal government behind them in dealing with small entities must adjust their actions accordingly and not routinely issue original penalties or other demands at the high end of the scale merely as a way of pressuring small entities to agree to quick settlements.

The Equal Access to Justice Act (EAJA) provides a means for prevailing parties to recover their attorneys fees in a wide variety of civil and administrative actions between eligible parties and the government. This bill amends the EAJA to create a new avenue for small entities to recover their attorneys fees where the government makes excessive demands in enforcing compliance with a statutory or regulatory requirement, either in an adversary adjudication or judicial review of the agency's enforcement action, or in a civil enforcement action. In these situations, the test for recovering attorneys fees is whether the agency or government demand that led to the administrative or civil action is substantially in excess of the final outcome of the case so as to be unreasonable when compared to the final outcome (whether a fine, injunctive relief or damages) under the facts and circumstances of the case.

The comparison called for in the Act is always between a "demand" by the government for injunctive and monetary relief taken as a whole and the final outcome of the case in terms of injunctive and monetary relief



taken as a whole. As used in these amendments, the term "demand" means an express written demand that leads to an adversary adjudication or civil action. A written demand by the government for performance or payment qualifies under this section regardless of form, including an original fine, penalty notice, demand letter, citation or otherwise. In the case of an adversary adjudication, the demand would often be a statement of the "Definitive Penalty Amount." In the case of a civil action brought by the United States, the demand could be in the form of a demand for settlement issued prior to commencement to the litigation. In a civil action to review the determination of an administrative proceeding, the demand could be the demand that led to such proceeding. However, the term " demand" should not be read to extend to a mere recitation of facts and law in a complaint. The bill's definition of the term "demand" expressly excludes a recitation of the maximum statutory penalty in the complaint or elsewhere when accompanied by an express demand for a lesser amount. This definition is not intended to suggest that a statement of the maximum statutory penalty somewhere other than the complaint, which is not accompanied by an express demand for a lesser amount, is per se a demand, but would depend on the circumstances.

This test should not be a simple mathematical comparison. The Committee intends for it to be applied in such a way that it identifies and corrects situations where the agency's demand is so far in excess of the true value of the case, as demonstrated by the final outcome, that it appears the agency's assessment or enforcement action did not represent a reasonable effort to match the penalty to the actual facts and circumstances of the case.

In addition, the bill excludes attorneys fee awards in connection with willful violations, bad faith actions and in special circumstances that would make such an award unjust. These additional factors are intended to provide a " safety valve" to ensure that the government is not unduly deterred from advancing its case in good faith. Special circumstances are intended to include both legal and factual considerations which may make it unjust to require the public to pay attorneys fees, even in situations where the ultimate award is significantly less than the amount demanded. Special circumstances could include instances where the party seeking fees engaged in a flagrant violation of the law, endangered the lives of others, or engaged in some other type of conduct that would make the award of the fees unjust. The actions covered by " bad faith" include the conduct of the party seeking fees both at the time of the underlying violation, and during the enforcement action. For example, if the party seeking fees attempted to elude government officials, cover up its conduct, or otherwise impede the Government's law enforcement activities, then attorney's fees should not be awarded.

The bill also increases the maximum hourly rate for attorneys fees under the EAJA from $75 to $125. Agencies could avoid the possibility of paying attorneys fees by settling with the small entity prior to final judgement. The Committee anticipates that if a settlement is reached, all further claims of either party, including claims for attorneys fees, could be included as part of the settlement. The government may obtain a release specifically including attorneys fees under EAJA.

Additional language is included in the Act to ensure that the legislation did not violate of the PAYGO requirements of the Budget Act. This language requires agencies to satisfy any award of attorneys fees or expenses arising from an agency enforcement action from their discretionary appropriated funds, but does not require that an agency seek or obtain an individual line item or earmarked appropriation for these amounts.

Section 333

The new provisions of the EAJA apply to civil actions and adversary adjudications commenced on or after the date 14 days after the date of enactment.

Subtitle D-Regulatory Flexibility Act Amendments

WESTLAW    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

142 Cong. Rec. S3242-02, 142 Cong. Rec. S3242-02 (1996)



USCA Case #22-5341    Document #1992195    Filed: 03/29/2023    Page 31 of 35

Section 341

The bill expands the coverage of the RFA to include IRS interpretive rules that provide for a "collection of information" from small entities. Many IRS rulemakings involve "interpretative rules" that IRS contends need not be promulgated pursuant to section 553 of the Administrative Procedures Act. However, these interpretative rules may have significant economic effects on small entities and should be covered by the RFA. The amendment applies to those IRS interpretative rulemakings that are published in the Federal Register for notice and comment and that will be codified in the Code of Federal Regulations. This limitation is intended **\*S3245** to exclude from the RFA other, less formal IRS publications such as revenue rulings, revenue procedures, announcements, publications or private letter rulings.

The requirement that IRS interpretative rules comply with the RFA is further limited to those involving a "collection of information." The term "collection of information" is defined in the Act to include the obtaining, causing to be obtained, soliciting of facts or opinions by an agency through a variety of means that would include the use of written report forms, schedules, or reporting or other record keeping requirements. It would also include any requirements that require the disclosure to third parties of any information. The intent of this phrase "collection of information" in the context of the RFA is to include all IRS interpretive rules of general applicability that lead to or result in small entities making calculations, keeping records, filing reports or otherwise providing information to IRS or third parties.

While the term "collection of information" also is used in the Paperwork Reduction Act (Title 44 U.S.C. Section 3502(4))("PRA"), the purpose of the term in the context of the RFA is different that the purpose of the term in the PRA. Thus, while some courts have interpreted the PRA to exempt from its requirements certain recordkeeping requirements that are explicitly required by statute, such an interpretation would be inappropriate in the context of the RFA. If a collection of information is explicitly required by the Code, the effect might be to limit the possible regulatory alternatives available to the IRS in the proposed rulemaking, but would not exempt the IRS from conducting a regulatory flexibility analysis.

Some IRS interpretative rules merely reiterate or restate the statutorily required tax liability. While a small entity's tax liability may be a burden, the RFA cannot act to supersede the statutorily required tax rate. However, most IRS interpretative rules involve some aspect of defining or establishing requirements for compliance with the Code, or otherwise require small entities to maintain records to comply with the Code, and would now be covered by the RFA. One of the primary purposes of the RFA is to reduce the compliance burdens on small entities whenever possible under the statute. To accomplish this purpose, the IRS should take an expansive approach in interpreting the phrase "collection of information" when considering whether to conduct a regulatory flexibility analysis.

The Act provides for judicial review of the RFA, and the courts generally are given broad discretion to formulate appropriate remedies under the facts and circumstances of each individual case. The rights of judicial review and remedial authority of the courts provided in the Act as to IRS interpretative rules should be applied in a manner consistent with the purposes of the Anti-Injunction Act (26 U.S.C. 7421), which may limit remedies available in particular circumstances. The RFA, as amended by the Act, permits the court to remand a rule to an Agency for further consideration of the rule's impact on small entities. The amendment also directs the court to consider the public interest in determining whether or not to delay enforcement of a rule against small entities pending agency compliance with the court's findings. In the context of IRS interpretative rulemakings, this language should be read to require the court to give appropriate deference to the legitimate public interest in the assessment and collection of taxes reflected by the Anti-Junction Act. The court should not exercise its discretion more broadly than necessary under the circumstances or in a way that might encourage excessive litigation.



USCA Case #22-5341    Document #1992195    Filed: 03/29/2023    Page 32 of 35

If an agency is required to publish an initial regulatory flexibility analysis, the agency also must publish a final regulatory flexibility analysis. In the final regulatory flexibility analysis, agencies will be required to describe the impacts of the rule on small entities and to specify the actions taken by the agency to modify the proposed rule to minimize the regulatory impact on small entities. Nothing in the bill directs the agency to choose to regulatory alternative that is not authorized by the statute granting regulatory authority. The goal of the final regulatory flexibility analysis is to demonstrate how the agency has minimized the impact on small entities consistent with the underlying statute and other applicable legal requirements.

### Section 342

The bill removes the current prohibition on judicial review of agency compliance with the RFA and allows adversely affected small entities to seek judicial review of agency compliance with the Act within one year after final agency action, except where a provision of law requires a shorter period for challenging a final agency action. The prohibition on judicial enforcement of the RFA is contrary to the general principle of administrative law, and it has long been criticized by small business owners. Many small business owners believe that agencies have given lip service at best to RFA, and small entities have been denied legal recourse to enforce the Act's requirements.

The amendment is not intended to encourage or allow spurious lawsuits which might hinder important governmental functions. The one-year limitation on seeking judicial review ensures that this legislation will not permit indefinite, retroactive application of judicial review. The bill does not subject all regulations issued since the enactment of the RFA to judicial review. After the effective date, if the court finds that a final agency action was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law, the court may set aside the rule or order the agency to take other corrective action. The court may also decide that the failure to comply with the RFA warrants remanding the rule to the agency or delaying the application of the rule to small entities pending completion of the court ordered corrective action. However, in some circumstances, the court may find that there is good cause to allow the rule to be enforced and to remain in effect pending the corrective action.

### Section 343

The bill requires agencies to publish their factual, policy and legal reasons when making a certification under section 605 of the RFA that the regulations will not impose a significant economic impact on a substantial number of small entities.

### Section 344

The bill amends the existing requirements of RFA section 609 for small business participation in the rulemaking process by incorporating a modified version of S. 917, the Small Business Advocacy Act, introduced by Senator DOMENICI, to provide early input from small business into the regulatory process. For proposed rules with a significant economic impact on a substantial number of small entities, EPA and OSHA would have to collect advice and recommendations from small businesses to better inform the agency's regulatory flexibility analysis on the potential impacts of the rule. The House version drops the provision of the Senate bill that would have required the panels to re-convene prior to publication of the final rule.

The agency promulgating the rule would consult with the SBA's Chief Counsel for Advocacy to identify individuals who are representative of affected small businesses. The Agency would designate a senior level official to be responsible for implementing this section and chairing an interagency review panel for the rule. Before the publication of an initial regulatory flexibility analysis for a proposed EPA or OSHA rule, the SBA's Chief Counsel for Advocacy will gather information from individual representatives of small businesses and other small entities,

142 Cong. Rec. S3242-02, 142 Cong. Rec. S3242-02 (1996)

USCA Case #22-5341    Document #1992195         Filed: 03/29/2023    Page 33 of 35



such as small local governments, about the potential impacts of that proposed rule. This information will then be reviewed by a panel composed of members from EPA or OSHA, OIRA, and the Chief Counsel. The panel will then issue a report on those individuals' comments, which will become part of the rulemaking record. The review panel's report and related rulemaking information will be placed in the rulemaking record in a timely fashion so that others who are interested in the proposed rule may have an opportunity to review that information and submit their own responses for the record before the close of the agency's public comment period for the proposed rule. The legislation includes limits on the period during which the review panel conducts its review. It also creates a limited process allowing the Chief Counsel to waive certain requirements of the section after consultation with the Office of Information and Regulatory Affairs and small businesses.


Section 345


This section provides that the effective date of the RFA amendment is 90 days after enactment. Proposed rules published after the effective date must be accompanied by an initial regulatory flexibility analysis or a certification under section 605 of the RFA. Final rules published after the effective date must be accompanied by a final regulatory flexibility analysis or a certification under section 605 of the RFA, regardless of when the rule was first proposed. Thus judicial review shall apply to any final regulation published after the effective date regardless of when the rule was proposed. However, IRS interpretive rules proposed prior to enactment will not be subject to the amendments made in this subchapter expanding the scope of the RFA to include IRS interpretive rules. Thus, the IRS could finalize previously proposed interpretive rules according to the terms of currently applicable law, regardless of when the final interpretive rule is published.<>


SMALL BUSINESS REGULATORY ENFORCEMENT FAIRNESS ACT

Mr. BUMPERS.

Mr. President, I want to associate myself with the remarks of the distinguished chairman of our committee and the principle author of S. 942. He and I, as well as our staffs, worked together on this bill in a true spirit of bipartisanship. The shortness of time between the markup of S. 942 and consideration on the floor did not permit the staff to prepare a full-blown report, as we usually do. Instead, we have offered this section-by-section analysis as a joint explanatory statement by the managers, even though there was not a formal conference on this bill. The House chose to amend S. 942 in several respects. The chairman and I were consulted about these changes, and we agree that they are helpful. It is our hope that anyone reading this statement will treat it exactly as they would a formal Senate committee report since it reflects the consensus views of many Senators on **\*S3246** both sides of the aisle who have participated in completion of S. 942, which is now title III, in H.R. 3136.<>


End of Document                                        © 2023 Thomson Reuters. No claim to original U.S. Government Works.



Code of Federal Regulations
  Title 26. Internal Revenue
    Chapter I. Internal Revenue Service, Department of the Treasury
      Subchapter A. Income Tax
        Part 1. Income Taxes (Refs & Annos)
          Procedure and Administration
            Information and Returns
              Returns and Records (Refs & Annos)
                Information Returns

26 C.F.R. § 1.6038–5, Treas. Reg. § 1.6038–5

§ 1.6038–5 Information returns required of certain United States persons to report amounts determined with respect to certain foreign corporations for global intangible low-taxed income (GILTI) purposes.

Effective: June 21, 2019
Currentness

**(a) Requirement of return.** Except as provided in paragraph (d) of this section, each United States person who is a United States shareholder (as defined in section 951(b)) of any controlled foreign corporation (as defined in section 957) must make an annual return on Form 8992, "U.S. Shareholder Calculation of Global Intangible Low–Taxed Income (GILTI)," (or successor form) for each U.S. shareholder inclusion year (as defined in § 1.951A–1(f)(7)) setting forth the information with respect to each such controlled foreign corporation, in such form and manner, as Form 8992 (or successor form) prescribes.

**(b) Time and manner for filing.** Returns on Form 8992 (or successor form) required under paragraph (a) of this section for a taxable year must be filed with the United States person's income tax return on or before the due date (taking into account extensions) for filing that person's income tax return.

**(c) Failure to furnish information—(1) Penalties.** If any person required to file Form 8992 (or successor form) under section 6038 and this section fails to furnish the information prescribed on Form 8992 within the time prescribed by paragraph (b) of this section, the penalties imposed by section 6038(b) and (c) apply.

**(2) Increase in penalty.** If a failure described in paragraph (c)(1) of this section continues for more than 90 days after the date on which the Director of Field Operations, Area Director, or Director of Compliance Campus Operations mails notice of such failure to the person required to file Form 8992, such person shall pay a penalty of $10,000, in addition to the penalty imposed by section 6038(b)(1), for each 30–day period (or a fraction of) during which such failure continues after such 90–day period has expired. The additional penalty imposed by section 6038(b)(2) and this paragraph (c)(2) shall be limited to a maximum of $50,000 for each failure.

**(3) Reasonable cause—(i)** For purposes of section 6038(b) and (c) and this section, the time prescribed for furnishing information under paragraph (b) of this section, and the beginning of the 90–day period after



USCA Case #22-5341   Document #1992195   Filed: 03/29/2023   Page 35 of 35

mailing of notice by the director under paragraph (c)(2) of this section, shall be treated as being not earlier than the last day on which reasonable cause existed for failure to furnish the information.

**(ii)** To show that reasonable cause existed for failure to furnish information as required by section 6038 and this section, the person required to report such information must make an affirmative showing of all facts alleged as reasonable cause for such failure in a written statement containing a declaration that it is made under the penalties of perjury. The statement must be filed with the director where the return is required to be filed. The director shall determine whether the failure to furnish information was due to reasonable cause, and if so, the period of time for which such reasonable cause existed. In the case of a return that has been filed as required by this section except for an omission of, or error with respect to, some of the information required, if the person who filed the return establishes to the satisfaction of the director that the person has substantially complied with this section, then the omission or error shall not constitute a failure under this section.

**(d) Exception from filing requirement.** Any United States person that does not own, within the meaning of section 958(a), stock of a controlled foreign corporation in which the United States person is a United States shareholder for a taxable year is not required to file Form 8992. For this purpose, whether a U.S. person owns, within the meaning of section 958(a), stock of a controlled foreign corporation is determined under § 1.951A–1(e).

**(e) Applicability date.** This section applies to taxable years of controlled foreign corporations beginning on or after October 3, 2018.

**Credits**

[T.D. 9866, 84 FR 29369, June 21, 2019]

SOURCE: Sections 1.6001-1 to 1.6091-4 contained in T.D. 6500, 25 FR 12108, Nov. 26, 1960; T.D. 6500, 25 FR 11402, Nov. 26, 1960; 25 FR 14021, Dec. 21, 1960, unless otherwise noted.

Current through March 7, 2023, 88 FR 14081. Some sections may be more current. See credits for details.

**End of Document**                                      © 2023 Thomson Reuters. No claim to original U.S. Government Works.